IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Richard G. Summers,<br><br>    Plaintiff,<br><br>v.<br><br>County of Charleston and/or The Charleston County Sheriff's Department, Deputy R. Stern, Deputy M. Sharpe, Deputy H.E. Bohlander,<br><br>    Defendants. | Civil Action No.: 2:10-cv-03291-RMG-BM |

# Exhibit 15

**Charleston County Sheriff's Office**  
**Policy and Procedure Manual**

*Procedure 6-20*  
*Taser*

---

### 6-20 TASERS

☐ NEW   ☒ REVISED   ☐ REVIEWED

CALEA STANDARDS REF. NUMBERS: 1.3.1, 1.3.4, 1.3.5, 1.3.6, 1.3.7, 1.3.9, 1.3.10, 1.3.11, 1.3.12, 1.3.13

APPROVED:

*J. Al Cannon, Jr.*                     __3/30/2010__
Sheriff J. Al Cannon, Jr., Esq.          Date

---

I. Purpose

   To provide deputy sheriffs of the Charleston County Sheriff's Office with guidelines on the use of Tasers.     (Ref: CALEA 1.3.4)

II. Policy

   To provide deputy sheriffs with options for controlling combative or uncooperative subjects in a manner that minimizes the risk of injury to the deputy sheriff, resistive subject and the public. Deputy sheriffs will use only the force necessary to accomplish lawful objectives.     (Ref: CALEA 1.3.1)

III. Definitions

   A. Force: Conduct on the part of a deputy sheriff that is designed to assist the deputy sheriff in controlling a situation or the actions or behavior of a person or persons.

   B. Continuum of Force: The escalation of force used by a deputy sheriff in order to control a situation or the actions of persons, from minimum to maximum, i.e., verbal control, intermediate force, to deadly force.

   C. Deadly Force: Any use of force that is likely to cause death or serious physical injury.

   D. Less Lethal Weapon: Weapon designed to incapacitate a subject or gain compliance from a subject to affect a safer transition of the subject into custody.

*Charleston County Sheriff's Office*  
*Policy and Procedure Manual*                                           *Procedure 6-20*  
                                                                        *Taser*

E. Serious Physical Injury: Any bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in long term loss or impairment to any bodily member or organ.

F. Electronic Control Device (ECD): A device that is designed to temporarily incapacitate a subject by delivering electrical pulses to the person. The electrical pulses are intended to completely override the central nervous system and directly control the skeletal muscles. The ECD effect is intended to cause an uncontrollable contraction of the muscle tissue, physically debilitating the targeted subject regardless of pain tolerance or mental focus.

G. X26 Taser: A 26 watt hand held ECD manufactured by TASER International. The device fires two probes utilizing compressed nitrogen from a replaceable air cartridge. The probes are connected to the weapon by two high voltage insulated wires. Electrical pulses are sent along the wires to the probes with the intended effect of temporarily incapacitating the targeted subject.

H. Anti-Felon Identification (AFID): Small identification tags ejected from the air cartridge when the Taser is fired. The tags have the cartridge's serial number printed on them allowing identification of which unit was fired.

I. Air Cartridge: The replaceable cartridge of the Taser that contains and expels the electrical probes. The air cartridge has two probes on the front allowing it to be used as a contact device. When the air cartridge is removed the Taser can also be used as a contact ECD. The air cartridge has an expiration date and ejects 40 AFID tags when fired.

J. Data Port: A computer data port located inside the hand grip of the Taser that allows data to be downloaded from the device. Each time the device is fired it stores the time and date it was fired.

K. Spark Test: A visible spark between electrodes that verifies the proper operation of all components and confirms adequate Digital Power Magazine strength. The test is accomplished with the air cartridge removed.

L. Digital Power Magazine (DPM): The power supply unit for the X26 Taser.

CCSO - 0679

*Charleston County Sheriff's Office*  
*Policy and Procedure Manual*

Procedure 6-20  
Taser

IV. Procedure

    A. Training and Qualification:

        1. Only deputy sheriffs who have successfully completed the 4 hour block of training prescribed by Taser International and demonstrated proficiency in the use of the Taser will be approved to carry such weapons.  (Ref: CALEA 1.3.10)

        2. The Taser is the only ECD issued and approved for use by the Sheriff's Office.  (Ref: CALEA 1.3.9, item *a*)

        3. All deputy sheriffs are required to attend familiarization training on the agency's use of force procedures and demonstrate competency with the Taser at least annually. Instruction and certification for the Taser will be provided by a certified Taser instructor.  (Ref: CALEA 1.3.11, item *a*)

        4. It will be the responsibility of the Sheriff's Office Training Section to schedule competency training for all deputy sheriffs in accordance with this procedure and to appropriately document such training.  (Ref: CALEA 1.3.11, item *b*)

        5. All deputy sheriffs will be issued a copy of this procedure. Training in the content and intent of this procedure will be accomplished and acknowledged in writing prior to personnel being authorized to carry the Taser.  (Ref: CALEA 1.3.12)

    B. Methods for Carrying:

        1. The Taser will be worn by all uniformed and non-uniformed deputy sheriffs when engaged in field activities unless exempted as follows:

            a. when the deputy sheriff is involved in undercover or plainclothes work that their supervisor determines would be compromised by wearing the Taser; or

            b. when the deputy sheriff is assigned to perform an administrative function and with the approval of their supervisor.

CCSO - 0680

*Charleston County Sheriff's Office*  
*Policy and Procedure Manual*

*Procedure 6-20*  
*Taser*

    2.    The Taser will be worn in the cross-draw position on the deputy sheriff's weak side, opposite of their sidearm.

C.    Inspections of the Taser:

    1.    Though the Taser is a highly sophisticated electronic device, there are times when the weapon is subjected to extreme conditions in the field such as dropping, exposure to significant moisture, etc., and these factors could damage the internal components without external indication.

    2.    Supervisors will be responsible for ensuring that the Taser is properly worn and maintained as required by this directive.

    3.    A monthly inspection of all issued Tasers will be conducted by supervisors for cleanliness, signs of damage, abuse and air cartridge expiration. During this inspection, supervisors will download data from the Taser's data port to verify there have been no unreported uses. The results of the downloaded recordings will be documented in the employee's chronological file.

    4.    Inclusive of the monthly inspection, supervisors are to ensure that a daily spark test is conducted on all departmental issued Tasers for all subordinates under their supervision. This test should be conducted at the beginning of each work day, excluding days off. The duration of the spark test will be for a five second cycle.

    5.    In the event the Taser fails to spark rapidly or loudly, the battery life may have been reduced and will need to be replaced. The deputy sheriff must check the power percentage display on the Central Information Display located on the rear of the Taser. If the display is below 20% the deputy sheriff will request a new DPM from Logistics. Continued use of the Taser with a below 20% level could cause damage to the Taser.

D.    Considerations for Deploying the Taser:

    1.    The deputy sheriff should take into consideration the following factors when deciding to deploy the Taser:

CCSO - 0681

*Charleston County Sheriff's Office*  *Procedure 6-20*
*Policy and Procedure Manual*  *Taser*

        a. the age of the subject;

        b. when a person is visibly pregnant;

        c. multiple subjects; and

        d. the relative strength of the subject.

2. The Taser has the ability to ignite flammable liquids. The device is not to be deployed on subjects who have come into contact with flammable liquids or in environments where flammable liquids are obviously present.

3. Deputy sheriffs should remember that some chemical agents, such as O.C. spray, have alcohol based carriers, which are flammable. The Taser will not be used on a subject who has been contaminated with a chemical agent containing an alcohol based carrier.

4. Consideration should be given and care taken in situations where the targeted subject is likely to experience a fall from an elevated position when struck by the device.

5. Deputy sheriffs should not touch the wires of the device while the unit is discharging or they may receive electrical shocks from the device.

6. If possible, deputy sheriffs deploying the Taser should be supported by at least one cover deputy sheriff.

E. Restrictions:

1. In less lethal situations, deputy sheriffs will not deploy the Taser:

        a. when apprehending persons who are not an imminent threat to the public or deputy sheriffs;

        b. on a subject who is in control of a vehicle, while that vehicle is moving or in gear;

        c. on a subject who is complying with a deputy sheriff's commands without hesitation;

6-20 page 5 of 10    *Revised 03/01/2010*

CCSO - 0682

**Charleston County Sheriff's Office**  
**Policy and Procedure Manual**

*Procedure 6-20*  
*Taser*

      d.    during any instance where the subject is only offering passive resistance; or

      e.    when it is reasonable to believe that incapacitation of the subject may result in serious injury or death.

  2.    Under no circumstances will the Taser be used:

      a.    to threaten or elicit information; or

      b.    to intentionally display or deploy as a practical joke or as a form of harassment.

F.    Deploying the Taser:

  1.    The Taser is a defensive weapon and is recognized as a secondary, less lethal weapon. The use of the Taser is an intermediate use of force and will be consistent with our agency's Use of Force Procedures.

  2.    The Taser can be used at a distance up to 21 feet; however, the optimum distance is 7 to 15 feet. The device is equipped with both laser and fixed sights. The top probe will follow the sight of the device and the bottom probe will drop at an 8 degree angle, dropping approximately one foot for every seven feet of travel.

  3.    Taser International recommends that the preferred target zones be at or below the mid to lower abdomen, i.e., below the tip of the sternum, to the back or the legs. The Taser should not be deliberately aimed at the face, neck, head, chest or groin regions.

  4.    Just prior to discharge, the deputy sheriff will state "TASER, TASER" to alert other deputy sheriffs. Also, this will afford the subject ample time to stop resisting and comply with verbal commands.

  5.    The Taser is programmed to give a five second burst. The duration of the burst may be shortened by depressing the safety lever at the deputy sheriff's discretion. Additional bursts may be administered by pulling the trigger if the targeted subject is not controlled by the initial burst.

*Charleston County Sheriff's Office*  
*Policy and Procedure Manual*

*Procedure 6-20*  
*Taser*

6. The Taser can be used in a drive stun mode either with or without the air cartridge installed, by driving the Taser aggressively into the subject.

7. The Taser can be deployed on aggressive animals in some justified situations where the deployment of a firearm may not be available, or the best option.

G. Actions Following Deployment of the Taser:

1. The targeted subject should be restrained as soon as possible following deployment of the Taser, but prior to the removal of the probes.

2. If the subject attempts to run after being struck, the deploying deputy sheriff should run with the subject if possible in order to avoid breaking the wires. Tactical and safety considerations should be constantly evaluated under these circumstances.

3. The Charleston County Consolidated 9-1-1 Center (9-1-1 Center) shall be notified and a patrol supervisor requested to the scene following deployment of the Taser.

4. Any marks left by the Taser probes will be photographed. Photographic documentation should be done by the deputy sheriff involved and may be done at the scene, medical facility or Detention Center. The photographic documents will be placed into evidence.

5. Following deployment of the Taser, data will be downloaded from the device for documentation purposes. A supervisor will download data from the Taser's data port. Once the data has been downloaded successfully, the supervisor will install a new air cartridge and reissue the Taser to the deputy sheriff.

6. If a supervisor is unable to download the data, the Taser will be placed into evidence so that the data from the device can be downloaded at a later time. In these instances, the supervisor will ensure the deputy sheriff is issued another Taser before going back in service. After the data has been downloaded, the

*Charleston County Sheriff's Office*  *Procedure 6-20*
*Policy and Procedure Manual*  *Taser*

      initial device will be reissued to the deputy sheriff with a new air cartridge installed.

H. Removal of Probes:

1. The cartridge will be removed from the Taser prior to removal of the probes.

2. The deputy sheriff will wear the issued medical gloves.

3. The probes should be considered sharps and handled accordingly.

4. The deputy sheriff will place one finger on either side of the probe and stretch the skin taut.

5. Using a brisk pull, the deputy sheriff will then pull the probe out of the subject.

6. The puncture site will be wiped with a sterile alcohol swab and an adhesive bandage applied to the site.

7. Deputy sheriffs will use all due regard to privacy issues with members of the opposite sex when removing the probe. When practical the probes should be removed by members of the same sex as the subject.

I. Rendering Aid After Use of Force:

1. In the event the subject suffered a secondary injury or is displaying any need for immediate medical attention deputy sheriffs will render or arrange for immediate and appropriate medical aid. The deputy sheriff utilizing force will notify their immediate supervisor of any medical attention requested/required.  (Ref: CALEA 1.3.5)

2. The general procedure for rendering aid will be to notify the 9-1-1 Center and request emergency medical service response. The deputy sheriff will, within individual capabilities, render first aid as appropriate until the arrival of EMS.

3. If there is no other more serious injury and the probes penetrated sensitive areas of the body such as the face, neck or

*Charleston County Sheriff's Office*  **Procedure 6-20**
*Policy and Procedure Manual*  **Taser**

groin area, probes will be removed by medical personnel. If the subject is an arrestee, he or she will be transported to the Detention Center, to have the probes removed by Detention Center medical personnel. The Detention Center will be notified by the 9-1-1 Center that the deputy sheriff is enroute to the Detention Center with an arrestee that the Taser was deployed on.

J.  Reporting Use of Force:

   1.  Deputy sheriffs will submit a detailed *Incident Report* and *Use of Force Report* justifying the use of the Taser and deployment of the Taser. This will include an *Incident Report* being accomplished when a deputy sheriff un-holsters their Taser and merely presents or points the Taser at any targeted subject, which in turn, resulted into the compliance by the subject without actual deployment.

   2.  The on scene supervisor will complete a synopsis of the incident and a *Supervisory Taser Report* after every use of the Taser with the exception of authorized training and the daily spark test.     (Ref: CALEA 1.3.6 item b and c)

K.  Administrative Review of Critical Incidents:

   1.  All uses of the Taser will be reviewed by the agency's Office of Professional Standards to determine whether:

       a.  agency rules, policy or procedures were violated;

       b.  the relevant policy was clearly understandable and effective to cover the situation; and

       c.  agency training is currently adequate.

   2.  All findings of policy violations or training inadequacies will be reported to the appropriate department for resolution and/or disciplinary action.     (Ref: CALEA 1.3.7)

   3.  The Office of Professional Standards will include incidents of the use of Tasers in the documented annual analysis of use of force to determine training needs and/or policy modifications.  Ref: CALEA 1.3.13)

*Charleston County Sheriff's Office*  *Procedure 6-20*
*Policy and Procedure Manual*  *Taser*

This directive is for Sheriff's Office use only and does not apply in any criminal or civil proceeding. The Sheriff's Office policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this directive will only form the basis for agency administrative sanctions.