IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Richard G. Summers,<br><br>    Plaintiff,<br><br>v.<br><br>County of Charleston and/or The Charleston County Sheriff's Department, Deputy R. Stern, Deputy M. Sharpe, Deputy H.E. Bohlander,<br><br>    Defendants. | Civil Action No.: 2:10-cv-03291-RMG-BM |

# Exhibit C

# FORENSIC EVALUATION OF RECORDS

**EXAMINER**: Diana Mullis M.D.

**RECORDS**: Richard Summers
Date of Birth: November 27, 1955

**DATE OF REPORT**: November 2, 2011

**REASON FOR CONSULTATION**: I was retained by Paul Gibson, Attorney-at-law, to perform a forensic evaluation of the provided records of Richard Summers and render expert opinions in regard to this case.

**OPINION**:

1. It is my opinion to a reasonable degree of medical certainty, that Mr. Summers did not have Sleepwalking Disorder on January 9, 2009. It is further my opinion that there is no evidence to support Mr. Summers has ever experienced Sleepwalking Disorder.
2. It is my opinion to a reasonable degree of medical certainty, that Mr. Summers' consumption of alcohol on January 9, 2009 caused him to experience the following disturbances: Alcohol-Induced Sleep Disorder with Parasomnia; and Alcohol-Induced Psychotic Disorder with Delusions, With Onset During Intoxication.

**REFERRAL ISSUES**:

1. Please state opinion as to whether there is evidence to support that Mr. Summers meets the diagnosis Sleepwalking Disorder.
2. Please state opinion as to the likely cause of the reported behavioral disturbance Mr. Summers experienced on January 9, 2009.

**DISCLOSURE OF CONFIDENTIALITY**: Dr. Diana Mullis was retained as a forensic consultant by Mr. Paul Gibson, Attorney-at-law. The information in this report will only be disclosed to Mr. Gibson. Should he decide to use the information in this report about Richard Summers, then Dr. Mullis may be required to testify and present her records. The evaluation was not performed for medical treatment purposes and no doctor-patient relationship was established.

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0001

MCPHEROL844

2

**SOURCES OF INFORMATION:**

1. Medical Examination Report for Commercial Driver Fitness Determination, dated October 7, 2005; October 1, 2007; and September 22, 2008;
2. Deposition of Richard Gregory Summers, dated September 30, 2011;
3. Deposition of Chandler Grimett, dated September 9, 2011;
4. Transcript RE: Jail Calls, dated January 11, 2009 through February 3, 2009;
5. Charleston County Emergency Medical Service (EMS) report, dated January 9, 2009;
6. Medical University of South Carolina (MUSC) Emergency Department records, dated January 9, 2009;
7. Prison Health Services, Inc. (PHS) Intake Receiving and Screening record, dated January 10, 2009;
8. PHS Refusal of Care form, dated January 10, 2009;
9. Charleston County Detention Center (CCDC) Jail Intake Assessment Form, dated January 10, 2009;
10. Charleston County Detention Center (CCDC) Clinic Note, dated January 14, 2009;
11. Charleston County Sheriff's Office Incident Report, Incident Supplement Report, Person Supplement Report, Articles Supplement Report, by DFC Hanna, dated January 9, 2009;
12. Charleston County Sheriff's Office Incident Supplement Report, by Deputy Bolander, dated January 10, 2009;
13. Charleston County Sheriff's Office Incident Supplement Report, by officer R. Stern, dated January 9, 2009;
14. Charleston County Sheriff's Office Incident Supplement Report, by officer Sharpe, dated January 9, 2009;
15. Charleston County Sheriff's Office Incident Supplement Report, by officer L. A. Russell, dated January 9, 2009;
16. Charleston County Sheriff's Office Incident Supplement Report, Person Supplement Reports, by Detective Jeremy Kraus, dated January 20, 2009;
17. Charleston County Sheriff's Office Arrest and Supplemental Booking Report, dated January 9, 2009;
18. Forensic Records of Rikki Lynn Halavonich, M.D. pertaining to Richard Summers, dated January 14, 2009 to August 10, 2011;
19. Medical records of Valerie Scott, M.D., dated February 21, 2005 to January 14, 2009;
20. Videotaped interview of Richard Summers with Dr. Halavonich lasting approximately 45 minutes of 2.5 hour interview, dated January 14, 2009;
21. Videotaped interview of Richard Summers with Dr. Halavonich lasting approximately 78 minutes, dated January 16, 2009;

---

Medical University of South Carolina
*Forensic Psychiatry Division*

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0002

MCPHEROL845

22. Transcript of Bench Trial Court of General Sessions Ninth Judicial Circuit, State of South Carolina versus Richard Summers, Defendant, dated April 9, 2010;
23. Insurance Claims Statement by Marylin Summers, dated February 12, 2009;
24. Investigative Report RE: interview of Marylin Summers, by Heather L. Dagg, Investigator, Riesen Law Firm, dated February 9, 2011;
25. Report of Criminal Responsibility and Capacity to Conform Evaluation, by Susan C. Knight, PhD.,ABPP and Eva Landron, M.D., dated November 25, 2009;
26. Psychiatric Evaluation by Rikki Lynn Halavonich, M.D., dated January 29, 2009;
27. Court of General Sessions Order Of Not Guilty by Reason of Insanity, by Honorable Kristi L. Harrington, dated April 9, 2010;
28. Aiken Regional Medical Center medical records, dated February 3, 2009 to February 10, 2009;
29. Aiken Regional Medical Center medical report of Polysonogram, dated February 5, 2009;
30. Carolinas Medical Center Northeast medical records, dated February 17, 2009 to March 5, 2009;
31. NortbEast Psychiatric Services records of Initial Psychological Assessment, dated February 19, 2009;
32. NorthEast Psychiatric Services records of Psychological Evaluation, dated February 23, 2009;
33. NorthEast Neurology Medical Records of Connie Tsang, M.D., dated February 20, 2009 through July 16, 2009;
34. Carolina Medical Center Northeast Sleep Medicine Services reports, dated March 7, 2009 and April 13, 2009;
35. Medical Records of Fred W. Caudill, M.D., dated April 15, 2009;
36. Forensic Psychiatric Expert Report, by Rikki Lynn Halavonich, M.D., dated August 10, 2011;
37. Affidavit of Sandra J. Senn, Attorney-at-law, dated November 1, 2011; and
38. Diagnostic And Statistical Manual of Mental Disorders, Fourth Edition, DSM-IV-TR;

**DIAGNOSTIC FORMULATION**: An evaluation was performed on the information provided in the available records of Richard Summers with the resulting diagnostic formulations:

Mr. Summers met the criteria for the diagnosis Alcohol-Induced Psychotic Disorder with Delusions, With Onset During Intoxication based on information in the available records. Mr. Summers and others reported that he had consumed a large amount of alcohol the day of his delusional episode on January 9, 2009. He reported that he started drinking alcohol at lunch,

continued to drink alcohol that afternoon with friends, and had additional alcohol the same evening prior to going to bed. He experienced paranoid delusions about his son being in danger, and the delusions resolved when he was no longer intoxicated. Mr. Summers has a history of similar episodes when he has been intoxicated with illicit substances. There was no medical evidence to support that he was experiencing withdrawal symptoms. The disturbance that he experienced is not better accounted for by Psychotic Disorder that was not substance induced, and there is no history of recurrent non-substance-related episodes.

Mr. Summer met the criteria for the diagnosis Alcohol-Induced Sleep Disorder with Parasomnia based on information in the available records. Mr. Summers and others reported that he had consumed a large amount of alcohol on January 9, 2009. His disturbances were characterized primarily by abnormal behavioral events that occurred in association with his sleep or sleep wake transitions. The disturbance was not better accounted for by a Sleep Disorder that was not substance induced, and there was no medical evidence of delirium. There was no general medical condition that may have accounted for this disturbance. His symptoms were sufficiently severe to warrant independent clinical attention and in excess of those usually associated with intoxication or withdrawal syndrome and he had no previous history of a parasomnia.

Consideration was given to the diagnosis Sleepwalking Disorder. He has no history of repeated episodes of rising from bed during sleep and walking about, unless substance induced. Collateral information provided no history of sleepwalking in childhood or adulthood. During sleepwalking an individual usually has a blank staring face, is relatively unresponsive to efforts of others to communicate with him or her. Speech is usually difficult to understand and often incoherent. During Mr. Summer's episode of sleep disturbance on January 9, 2009, it was reported that he maintained good eye contact and conversations with others.

Consideration was given to the diagnosis Rapid Eye Movement (REM) Sleep Behavioral Disorder, but there were no criteria met. The sleep study performed at Carolinas Medical Center Northeast on March 7, 2009 reported no Paroxysmal Limb Movements (PLM). Individuals with this sleep disorder will display PLM and other movements during REM sleep. During normal sleep an individual in the REM stage of sleep has no PLM or other motor function (movement).

Mr. Summers met the criteria for the diagnosis Alcohol Dependence, Early Full Remission based on available medical records and collateral information. Mr. Summers has a long history of drinking alcohol that started in childhood. He had continued to drink alcohol despite having experienced social and occupational consequences, as well as incurred legal charges as a result of his alcohol use. He has experienced blackouts and severe alcohol withdrawal symptoms of delirium tremens, but no reported withdrawal seizures. He has a history of failed treatments for alcohol dependence as evidenced by his continued heavy consumption of alcohol.

---

Medical University of South Carolina  
Forensic Psychiatry Division

NAME: Richard Summers  
DOB: November 27, 1955

Summers-Mullis- 0004

MCPHEROL847

Mr. Summers met the criteria for the diagnosis Cannabis Dependence, Sustained Full Remission based on available medical records and collateral information. He had a several year history of heavy use of cannabis. He and former wife reported that he experienced episodes of delusions and paranoia when he would use cannabis. He reported no use of cannabis for the past several years.

Mr. Summers met the criteria for the diagnosis Cocaine Dependence, Sustained Full Remission based on available medical records and collateral information. He reported a long history of using cocaine, including IV use. He has previous treatment for cocaine addiction and his most recent available records noted no use of cocaine.

Mr. Summers met the criteria for the diagnosis Poly-Substance Dependence, Sustained Full Remission based on available medical records and collateral information. He reported a several year history of using PCP, heroine, barbiturates, opiates, and hallucinogenic drugs. He has previous treatment for chemical dependency and his most recent available records noted no use of these substances, except for prescribed opiates for back pain in 2009.

Mr. Summers met the criteria for the diagnosis Breathing-Related Sleep Disorder based on his records. It was reported that he experienced recurrent insomnia and frequent middle of the night awakenings. The results of the sleep study performed at Carolinas Medical Center Northeast on March 7, 2009 were as follows: 1. Severe degree of obstructive sleep apnea; 2. Snore was severe in nature; 3. No evidence of periodic limb movement (PLM) during sleep, PML index zero; 4. Disruptive sleep indicated by increased arousals, 37/hour, and the majority was associated with respiratory events.

**DIAGNOSES:**

AXIS I:    Alcohol-Induced Psychotic Disorder with Delusions, With Onset During Intoxication
          Alcohol-Induced Sleep Disorder with Parasomnia
          Breathing-Related Sleep Disorder
          Alcohol Dependence, Early Full Remission
          Cannabis Dependence, Sustained Full Remission
          Cocaine Dependence, Sustained Full remission
          Poly-Substance Dependence, Sustained Full Remission
          Major Depressive Disorder
          Panic Disorder
Axis II:   Personality Disorder, Not Otherwise Specified, with Cluster B Traits

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0005

MCPHEROL848

Axis III:   Hypertension
Hepatitis C
Degenerative Disc Disease
Osteoarthritis
Hypercholesterolemia
Orthopedic Injuries
Multiple Back Injuries and Surgeries
Closed Head Injuries
Multiple Facial Fractures
Facial Reconstruction
Obstructive Sleep Apnea

**REQUESTED OPINIONS:**

It is my opinion to a reasonable degree of medical certainty, that Mr. Summers did not have a Sleepwalking Disorder on January 9, 2009. It is further my opinion that there is no evidence to support Mr. Summers has ever experienced Sleepwalking Disorder. My opinion is supported by the following:

1. Mr. Summers has no documented history of Sleepwalking Disorder. Fran Bryan, his mother; Marilyn Summers, wife; and Tammy Hartley, Mr. Summers' sister, all made statements that they had never known or observed him to sleep walk. His sister reported that Mr. Summers had Night Terrors as a child, and Mr. Summers described symptoms of Night Terrors as a child during his videotaped interview.
2. Mr. Summers reported no history of sleep disorders on his Medical Examination Report for Commercial Driver Fitness Determination dated, October 7, 2005; October 1, 2007; and September 22, 2008.
3. The sleep study performed at Carolinas Medical Center Northeast on March 7, 2009 showed no PML during any stage of his sleep.
4. Descriptions in medical literature of an individual during an episode of sleepwalking usually describe the person as having a blank, staring face, and being relatively unresponsive in communication with others. The individual may talk or respond to others' questions, but the articulation is usually poor and true dialogue rare. This is not consistent with bystanders' description of Mr. Summers' behaviors on the night of January 9, 2009.
5. In Chandler Grimett's deposition he described his observations of Mr. Summers on the night in question. He stated that Mr. Summers was acting strangely, but made eye contact when they talked. He described his speech as clear and articulate, and described no

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0006

MCPHEROL849

slurring or incoherence of speech. He reported that Mr. Summers responded appropriately to his name and called Mr. Grimett by his name, Bo. He also stated that Mr. Summers did not appear to have any problems with his motor skills, but appeared to be upset about something. He stated that Mr. Summers did not appear to be asleep, and he had never known him to sleepwalk.

6. An individual not uncommonly will have complete amnesia for the sleepwalking episode. Some episodes may be followed by vague recall of fragmentary dream images, but usually not by a typical story like a dream.
7. During his videotaped interview, Mr. Summers reported that he remembered being upset about his son's safety. He also described the course of events that occurred from the time he was in his yard wearing his underwear and attempting to get in his truck until his encounter with the police.
8. Mr. Summers described a previous episode of awakening to find that he was urinating in the corner of the bedroom. This does not support a description of sleepwalking, because it was not clarified in the report whether this occurred in the absence of intoxication.

It is my opinion to a reasonable degree of medical certainty, that Mr. Summers' consumption of alcohol on January 9, 2009 caused him to experience the following disturbances: Alcohol-Induced Sleep Disorder with Parasomnia; and Alcohol-Induced Psychotic Disorder with Delusions, With Onset During Intoxication. My opinion is supported by the following:

1. Mr. Summers' records show that he has a long history of alcohol dependence. On January 9, 2009, Mr. Summers reported that he started drinking alcohol at lunchtime. The records show that he had consumed a large amount of alcohol that day, up until the time he reported going to bed. For men, heavy drinking is typically defined as consuming an average of more than 2 drinks per day. For women, heavy drinking is typically defined as consuming an average of more than 1 drink per day.
2. On January 9, 2009, Dean Bender, Mr. Summers' ex-brother-in-law, reported that he was present and spent time with Mr. Summers at his home. He stated that Mr. Summers had been drinking beer and appeared intoxicated before he went to bed.
3. An affidavit of Sandra J. Senn, Attorney-at-law, documented the statements of Jennifer Renée Knight. She was a civilian bystander witness on the night of January 9, 2009, during Mr. Summers encounter with the police. Ms. Knight stated that she was in close proximity to Mr. Summers, and that "he smelled strongly of liquor and beer and was intoxicated."
4. Information in Mr. Summers' records showed collateral reports that Mr. Summers had experienced previous episodes of delusions while intoxicated. During his videotaped

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0007

8

interview, Mr. Summers stated that he had previously experienced delusions while under the influence of substances.

5. Mr. Summers reported no history of delusions unless he was intoxicated with substances, such as cannabis. His records document no history of recurrent non-substance-related episodes of delusions.

6. Mr. Summer's medical records show that he has liver disease, Hepatitis C (a viral liver infection), and his liver test results were elevated, but not severely. Alcohol is metabolized through the liver, and abnormal liver function could slow the clearance of alcohol from a person's blood, and thus causing higher blood levels of alcohol for longer periods of time than an individual without liver disease.

7. Mr. Summers' records contain a letter from his psychiatrist, Rikki Lynn Halavonich, M.D., dated March 27, 2009. She advised him not to drink any alcohol, and stated, "Even very modest alcohol consumption can trigger an episode similar to the night of the arrest."

8. Mr. Summers has no history of a primary psychotic disorder. The results of psychological evaluation and testing by Charles Schmittdiel, Ph.D., dated February 23, 2009, showed "no indicators throughout the test of any evidence of thought disorder symptomatology," and no diagnosis of cognitive disorders.

9. Mr. Summers has a history of Hepatitis C (a viral infection of the liver) and no blood ammonia level was performed as part of his evaluation at MUSC Emergency Department on January 9, 2009. Individuals with advanced liver disease can develop hepatic encephalopathy, but his presentation was not consistent with the altered mental changes that occur due to encephalopathy caused by high ammonia levels. There is no documentation in his records that he has advanced liver disease, but he does have some elevation of liver function blood studies. Mr. Summers' physical examination showed no documentation of tremor or asterixis (flapping of the hands when they are held out in front of the body). His mental status normalized as evidenced by the documentation that he was interacting appropriately with the staff, alert, and talkative. After release from MUSC, the records from CCDC indicated that he was alert, oriented, and responding to the intake questions appropriately. Therefore, it is less likely than not Mr. Summers' liver disease caused his confusion on January 9, 2009.

10. Mr. Summers' had hyponatremia (low sodium blood level) when evaluated in MUSC ED. In some individuals, this can cause confusion and cerebral edema (brain swelling). There is not evidence to support that this was the cause of Mr. Summers' confusion. The Computerized Tomography (CT) scan of his brain showed no abnormalities. His agitation and confusion resolved quickly, as evidenced by the documentation in the records that he was alert and appropriately interactive with the ED staff before he was discharged.

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0008

MCPHERO1851

Mental confusion caused by a low sodium level does not usually clear within a few hours, as in his case.
11. There is no medical evidence to support that Mr. Summers was experiencing withdrawal symptoms, delirium, or other medical disorders that could account for his delusions January 9, 2009.
12. The disturbance is not better accounted for by a sleep disorder that was not substance induced.
13. His symptoms were in excess of those usually associated with intoxication or withdrawal syndrome, and he had no previous history of a parasomnia.
14. Mr. Summers was diagnosed with Obstructive Sleep Apnea March 7, 2009, and this is classified as Breathing-Related Sleep Disorder. The symptoms of this disorder are not consistent with the behaviors and symptoms he displayed January 9, 2009.

**SUMMARY**: I evaluated the available records of Mr. Richard Summers. There are no findings in his records to support that he has experienced Sleepwalking Disorder. The facts in his records provide evidence that he experienced disturbances of behaviors and thoughts while intoxicated with alcohol on January 9, 2009. His disturbances included Alcohol-Induced Psychotic Disorder with Delusions, With Onset during Intoxication, and Alcohol-Induced Sleep Disorder with Parasomnia. There are no findings in Mr. Summers records to support that the disturbances were due to a general medical condition or a primary psychotic disorder.

Respectfully submitted,

*Diana Mullis, MD*            November 2, 2011

Diana Mullis, M.D.                Date Signed
Forensic Psychiatrist
Assistant Professor
Medical University of South Carolina
Diplomat of the American Board of
Psychiatry and Neurology

---

Medical University of South Carolina
Forensic Psychiatry Division

NAME: Richard Summers
DOB: November 27, 1955

Summers-Mullis- 0009

MCPHERO1852