IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION


Richard G. Summers,           )    Civil Action No.  2:10-3291-RMG-BM
                       )
           Plaintiff,      )
                       )
v.                       )
                       )    **REPORT AND RECOMMENDATION**
County of Charleston, County of Charleston )
Sheriff's Department, Deputy R. Stern,  )
Deputy M. Sharp, and Officer      )
H. E. Bohlander,           )
                       )
          Defendants.    )
_____)


        This action has been filed by the Plaintiff asserting federal claims of excessive force

and disability discrimination, as well as a state law claim for negligence/gross negligence/reckless

conduct.[1]  Plaintiff has filed a motion for partial summary judgment with respect to specified

excessive force claims asserted in Count I of the amended complaint, while the Defendants have filed

a motion for summary judgment with respect to all of Plaintiff's claims.  The Defendant Stern has

also filed a separate motion to dismiss.

        A hearing was held in this matter on July 19, 2012, at which the parties were

_____

     [1]This case was originally filed by the Plaintiff in the South Carolina Court of Common Pleas,
Charleston County, but was removed to this United States District Court by the Defendants on
December 28, 2010.

1



represented by able counsel. These motions are now before the Court for disposition.[2]

## Background and Evidence[3]

This action arises out of the arrest of the Plaintiff by the natural Defendants on July 9, 2009. At a little after 9:00 p.m. on that date, Plaintiff, a truck driver, got into the cab of his tractor trailer truck, and rammed it into his wife's car. <u>Grimmett Deposition</u>, pp. 14-15, 23-24. Plaintiff then apparently went back into his residence before returning to his truck. He was wearing only his underwear. <u>See</u> <u>Defendants' Exhibit F</u>; <u>Grimmett Deposition</u>, p. 15. Plaintiff then proceeded to drive across James Island until he reached an intersection where he pulled up behind Charleston County Sheriff's Deputy William Hanna, who was sitting in his patrol car waiting for the light to change. Plaintiff climbed out of his truck, still clad only in his underwear, and approached Deputy Hanna's patrol car. Hanna ordered the Plaintiff to step back, and then drew his side arm when Plaintiff continued to approach his vehicle. Plaintiff began yelling that someone was trying to kill his son at a nearby Burger King restaurant, and then ran into a nearby convenience store. <u>Hanna Deposition</u>, pp. 18-20. Hanna followed Plaintiff into the store, where by happenstance a City of Charleston Police Officer, Brian Riggs, was at the counter purchasing a soda. <u>Hanna Deposition</u>, pp. 22-23; <u>Riggs Deposition</u>, p. 14. Believing that Plaintiff may have been a crime victim, Hanna asked Riggs to stay with the Plaintiff and call for EMS while he [Hanna] went to the Burger King to investigate. <u>Riggs</u>

---

[2]These motions were referred to the undersigned pursuant to an Order of Reference entered by the Honorable Richard M. Gergel, United States District Judge. <u>See</u> Court Docket No. 6. As these are dispositive motions, a Report and Recommendation is being entered pursuant to 28 U.S.C. 636(b)(1)(A).

[3]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



Deposition, p. 14; Hanna Deposition, p. 23. See also Defendants' Exhibit I [Convenience Store Video Tape].

Hanna then went back to his patrol car to use the radio when he saw the Plaintiff running back to his truck with Riggs in pursuit. Hanna Deposition, p. 23; Riggs Deposition, p. 14. The police officers had trouble grabbing the Plaintiff because was sweating and slippery, and was wearing no clothes. Hanna drew his taser,[4] intending to use it stop the Plaintiff, but reholstered the taser after Plaintiff started the ignition of the tractor trailer truck. Hanna Deposition, pp. 23-24; Riggs Deposition, p. 14. Plaintiff then drove the truck into the back of Hanna's police cruiser, which was directly in front of it, forcing the police cruiser into a Monte Carlo that was stopped at the red light. Plaintiff then struck the police cruiser again, pushing it aside, and then ran into the back of the Monte Carlo, forcing the Monte Carlo into the intersection, where it collided with a Jeep. Hanna Deposition, p. 24; Riggs Deposition, p. 15; see also Defendants' Exhibit J [Gerena Use of Force Report at 0009].

Hanna testified that he considered firing his gun in an attempt to stop the truck, but did not do so out of concern for the safety of bystanders. Hanna Deposition, p. 24. Hanna remained at the intersection to assist with the accident victims, while Plaintiff proceeded on to the Burger King parking lot, where he crashed the truck in the parking lot. Hanna Deposition, pp. 24-25; Sharpe Deposition, pp. 22-23; Defendants' Exhibit J [at 0009-0010]. Hanna radioed for units to respond to the Burger King, reporting that an individual driving a tractor trailer truck had fled the scene and

---

[4]"A 'taser' is a non-deadly weapon commonly carried by law enforcement. The taser administers an electric shock to a suspect by shooting two small probes into the suspect's body. The probes are connected to the firing mechanism via wires. Once fired, the probes lodge under the suspect's skin and administer an electric shock. This type of taser permits the officer to incapacitate a suspect from a moderate distance." Fils v. City of Aventura, 647 F.3d 1272, 1276 n. 2 (11th Cir. 2011); see Reiff v. Marks, No. 08-CV-5963, 2011 WL 666139, at * 3 n. 20, * 2 n. 23 (E.D.Pa. Feb. 23, 2011).



crashed his vehicle.  Id.

The Defendant Harry Bohlander, a Charleston County Sheriff's Deputy, heard the radio call and responded to the Burger King location.  Bohlander Deposition, pp. 19-20.  The Defendant Michael Sharpe, another Charleston County Sheriff's Deputy, also heard the radio call, as did Sheriff's Deputy Rachel Stern.  Sharpe Deposition, p. 21; Stern Deposition, pp. 60-61.  Upon arrival, Plaintiff was still behind the wheel of the tractor trailer truck with the engine running.  Plaintiff attempted to drive off.  Bohlander Deposition, pp. 21, 31; see also Sharpe Deposition, p. 23.  Bohlander initially had his gun drawn, but when he saw Plaintiff was not wearing any clothes, he holstered his gun and took out his taser.  Bohlander Deposition, p. 27.

Bohlander yelled at Plaintiff to "show me [your] hands" or he was going to get tased.  When Plaintiff did not comply with this command, Bohlander fired a taser dart into the Plaintiff.  Bohlander Deposition, pp. 27-28, 34; see also Plaintiff Exhibit 2 [Bohlander Taser Log].  Even though the attached taser prongs were activated a total of four times within a fifty-two second period, Plaintiff remained non-compliant.  Bohlander Deposition, pp. 37, 63-64; see Plaintiff's Exhibit 2 [Bohlander Taser Log].  At that point the Defendants Sharpe, Stern and Bohlander together with two other officers physically subdued the Plaintiff and placed him in handcuffs and leg shackles.  Bohlander Depostion, pp. 37-39; Defendants' Exhibit O; Stern Deposition, pp. 64-66.  Plaintiff was by that point on the ground in a face-down position.  Stern Deposition, p. 90.  Stern removed the taser probes from Plaintiff's back, and Plaintiff was placed in the back of Stern's patrol car.  Stern Deposition, pp. 66-68, 94, 103-106; Bohlander Deposition, pp. 39-40.  At that point Plaintiff was



compliant.[5]

       After Plaintiff had been placed in the back of Stern's vehicle, a distress call came over the police radio involving an incident at another nearby convenience store, to which all of the on duty officers responded, leaving Sharpe and Stern with the Plaintiff.[6] <u>Stern Deposition</u>, pp. 62, 82; <u>see also</u> <u>Sharpe Deposition</u>, pp. 36-37; <u>Bohlander Deposition</u>, p. 42. Subsequently, Stern looked over at her patrol car and observed that Plaintiff had begun to bang his head on the window of the patrol car. <u>Stern Deposition</u>, pp. 69, 106; <u>see also</u> <u>Sharpe Deposition</u>, pp. 36-37; <u>Trammel Deposition</u>, p. 6. The officers then moved the patrol car out of the roadway, and opened the car door in order to seat belt the Plaintiff. <u>Stern Deposition</u>, pp. 69-70; <u>see also</u> <u>Sharpe Deposition</u>, pp. 37-39. However, when the officers opened the car door, Plaintiff used the opportunity to exit the patrol car even as Stern was ordering him to stay in the car. <u>Stern Deposition</u>, pp. 70-71, 107-108; <u>see also</u> <u>Sharpe Deposition</u>, pp. 39, 41-42. Both officers testified that due to the fact that Plaintiff was wearing no clothes and was covered with sweat, it was difficult to get a hold of him. <u>Sharpe Deposition</u>, p. 39; <u>Stern Deposition</u>, pp. 71-72.

       Sharpe testified that even though they were instructing Plaintiff to get back into the vehicle, "he moved forward and started a full out sprint with the ankle irons - the leg irons on, and

---

[5]Although compliant, Plaintiff was not making any sense, and his conversation was "prattle". <u>Stern Depositon</u>, p. 95. Susannah Trammell, a paramedic with Charleston County EMS, testified that when she was called over to the police car where Plaintiff was, he "was disoriented, not answering questions appropriately, so I put him on the monitor; did a blood pressure, all the interventions that are listed and told them that he needed to go to the hospital because he wasn't – he couldn't – he wasn't alert and oriented." <u>Trammell Deposition</u>, p. 6.

[6]Although Sharpe and Stern responded to the original radio report because they were in the area, both of these deputies were actually off duty at the time. <u>See</u> <u>Sharpe Deposition</u>, pp. 21, 41; <u>Stern Deposition</u>, pp. 60, 86.



when he made that first jump toward me, I tased him.  I deployed my taser".  Sharpe Deposition, pp. 41-42; see also Plaintiff's Exhibit 5 [Sharpe Taser Log]; Stern Deposition, pp. 72-74; 109.  Sharpe testified that this taser appeared to have no effect, so he tased Plaintiff again.  Sharpe Deposition, p. 43.  The second taser shock alone was nine seconds in duration.  Plaintiff's Exhibit 5 [Sharpe Taser Log].  Plaintiff moved away from the car, but then Sharpe's taser appeared to be effective and Plaintiff went down to his knees and fell forward.  Stern Deposition, p. 116.[7]

     By that point the Defendant Bohlander had returned.  Even though Plaintiff was told to stay on the ground, he proceeded to get up.  Stern Deposition, pp. 80, 128; Trammel Deposition, pp. 7, 26.  Bohlander placed his hand on Plaintiff's shoulder, but then removed it.  Stern asked Plaintiff if he would like to lie on a blanket.  Plaintiff started to slowly move forward.  Although Plaintiff was surrounded by officers and was in both leg and hand shackles, Sharpe tased Plaintiff again.  See Plaintiff's Exhibit 6 [Television Station Video].  Plaintiff called out in pain and shuffled forward, picking up speed as he went.  See Plaintiff's Exhibit 6 [Television Station Video].  Bolander pulled out his ASP baton[8] to strike the Plaintiff, but heard Sergeant Maugans[9] scream out "No," so he started to pull it back and struck Plaintiff only a glancing blow as he went by.  Bohlander Deposition, pp. 47-48; see Plaintiff's Exhibit 6 [Television Station Video].  Sergeant Maugans yelled out for the officers to stop what "they were doing and go hands on with the suspect."  Bohlander Deposition, p. 66.  However, Sharpe again tased Plaintiff and the Defendant Stern also deployed her

---

    [7]It is at this point, where Plaintiff is on the ground, that the videotape exhibit starts.  Stern Deposition, p. 116; see Plaintiff's Exhibit 6 [Television Station Video].

    [8]ASP is a collapsible baton.  Bohlander Deposition, p. 16.

    [9]Another officer who had arrived on the scene.



own taser.  <u>Bohlander Deposition</u>, pp. 47-48; <u>see also</u> <u>Sharpe Deposition</u>, p. 53; <u>Stern Deposition</u>, pp. 78-79; <u>Plaintiff's Exhibit 6</u> [Television Station Video].  This finally dropped Plaintiff to the ground, with Sharpe and Stern standing over him.  See <u>Plaintiff's Exhibit 6</u> [Television Station Video]; <u>see also</u> <u>Maugans Deposition,</u> p. 12.  Plaintiff was thereafter examined again by EMS and transported to a hospital for treatment.  <u>See</u> <u>Trammell Deposition</u>, pp. 24-25; <u>Stern Deposition</u>, p. 82.

### Discussion

With respect to the summary judgment motions, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

### I.

### (First Cause of Action)

Plaintiff's first cause of action asserts a claim for excessive use of force against the Defendants Stern, Bohlander and Sharpe in their individual capacities.[10]  This claim is being asserted as a federal constitutional claim pursuant to 42 U.S.C. § 1983.  Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action for federal constitutional

---

[10]Plaintiff's counsel confirmed at the hearing that this cause of action is being asserted only against the three Defendant Sheriff's deputies.



violations committed by persons acting under color of state law.  See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973).  The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  See McKnight v. Rees, 88 F.3d 417 (6th Cir. 1996).  As sheriff's deputies, each of these Defendants is a "a state actor" for purposes of a § 1983 claim, and is subject to damages in their individual capacity.

As stated in the Complaint, Plaintiff seeks relief against these Defendants under both the Fourth and Fourteenth Amendments to the United States Constitution.  The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person.  Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997), citing Graham v. Conner, 490 U.S. 386, 388 (1989).  Thereafter, the Fourteenth Amendment due process clause protects a pre-trial detainee from the use of excessive force that amounts to punishment.  Graham, 490 U.S. at 395, n. 10.  Plaintiff alleges violations of both of these amendments because excessive force was allegedly applied during the course of his arrest and/or seizure, and was then applied again after he was in custody and therefore considered a "pre-trial detainee".  The Defendants argue that they are entitled to summary judgment on Plaintiff's entire excessive force claim, while Plaintiff in his motion for partial summary judgment asserts that he is entitled to summary judgment with respect to his Fourteenth Amendment excessive force claim covering the force used against him after he had been handcuffed and shackled.

**Fourth Amendment Claim**.  Turning first to the Defendants' actions towards the Plaintiff during the course of his arrest and/or seizure, Fourth Amendment claims of excessive use of force during an arrest are considered under an "objective reasonableness" standard.  Henry v.



Purnell, 652 F.3d 524, 531 (4th Cir. 2011); Culosi v. Bullock, 596 F.3d 195, 201 (4th Cir. 2010); Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008); Smith v. Kendall, No. 09-6452, 2010 WL 764051 (4th Cir. Mar. 8, 2010). This test requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985); Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007); White v. Town of Chapel Hill, 899 F.Supp. 1428, 1435 (M.D.N.C. 1995), aff'd, 70 F.3d 1264 (4th Cir. 1995); Sweatt v. State of Maryland, No. 89-3231, 1989 WL 126582 at **1 (4th Cir. 1989). What is objectively reasonable depends on what conditions exist at the time the alleged excessive force is used, recognizing that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham v. Connor, 490 U.S. at 396; Waterman v. Batton, 393 F.3d 471, 476-477 (4th Cir. 2005); see Greenidge v. Ruffin, 927 F.2d 789 (4th Cir. 1991). When considering a police officer's actions under this "objective reasonableness" standard, the Court must consider the circumstances of the particular case, including the severity of the crime committed, whether the subject posed an immediate threat to the safety of the police officers or others, and whether the subject was actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396; see Foote v. Dunagan, 33 F.3d 445, 447-448 (4th Cir. 1994); Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988); Waller v. City of Danville, 212 Fed. Appx. 162, 169 (4th Cir. 2006).

Here, the evidence reflects that Plaintiff was acting in an erratic manner which, especially considering the fact that he was driving a tractor trailer truck, posed a substantial risk of harm not just to the law enforcement officers who were attempting to restrain him, but also to the public. Plaintiff had already crashed his truck several times causing substantial damage and injuries,



his conduct was placing others at substantial risk of harm, and he was actively resisting or evading being restrained or taken into custody. The evidence further shows that Plaintiff failed to comply with commands given to him at the Burger King, resulting in his being tased by the Defendant Bohlander. The evidence also reflects that even after he was tased, Plaintiff remained non-compliant, resulting in the Defendants Sharpe, Stern and Bohlander together with two other officers having to physically subdue him in order to place him in handcuffs and leg shackles. This concluded the process of taking Plaintiff into custody for Fourth Amendment purposes. See Robles v. Prince George's County, 302 F.3d 262, 268 (4th Cir. 2002)["Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply"].

        After careful review of this evidence, the undersigned does not find that a genuine issue of fact exists with respect to whether excessive force was used against the Plaintiff to affect his arrest under the applicable caselaw. Even when considered in the light most favorable to the Plaintiff, his conduct on the evening in question was severe, the law enforcement officers had no idea what his state of mind was, whether he was on drugs, or what he would do next, and he was actively resisting restraint or being taken into custody. While Plaintiff argues that, rather than using a taser, the officers should have just physically subdued him (which is what they were ultimately forced to do anyway), that is not the criteria for an excessive force claim, as the use of a taser on someone who is out of control is not, by itself, excessive use of force. See Fils, 647 F.3d at 1289-1290 ["[T]he use of tasers or other weapons does not violate the Fourth Amendment per se."]; cf. Benson v. Deloach, No. 09-41, 2009 WL 3615026 (D.S.C. Oct. 28, 2009)[Defendant's use of force, including taser, was not unreasonable where officers believed Plaintiff posed a threat of serious harm]. Indeed, one can easily imagine a situation where a detainee argues that a taser should have been used against him rather than



his being physically restrained, because the taser would have been a lesser use of force. See, Fils, 647 F.3d at 1289-1290 [Noting that "where a suspect appears 'hostile, belligerent, and uncooperative,' use of a taser might be preferable to a 'physical struggle [causing] serious harm' to the suspect or officer."] citing Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004)[approving of an officer's use of a taser against a suspect at a traffic stop who "used profanity, moved around and paced in agitation, . . . repeatedly yelled at" the officer, and did not comply with verbal commands.]; see e.g., United States v. Sharpe, 470 U.S. 675, 686-687 (1985)["A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished by 'less intrusive' means . . . ."]. Rather, the issue is whether the amount of force used (whether it was physical restraint *or* use of a taser) was *excessive* under the circumstances. Riley, 115 F.3d at 1161 [Fourth Amendment prohibits *excessive* use of force].

Here, the evidence shows that even after Plaintiff was tased he continued to be non-compliant with the Defendants' commands, resulting in his having to be physically restrained in order to be placed in handcuffs. Given the facts known to the Defendants at the time, the actions of the Plaintiff as shown by the evidence, and the circumstances of this particular case, it was certainly objectively reasonable for the Defendants to believe that Plaintiff posed an immediate threat to their safety or to the safety of others or bystanders. Graham, 490 U.S. at 396; see Foote, 33 F.3d at 447-448; Martin, 849 F.2d at 869; see also Draper, 369 F.3d at 1278 [approving of an officer's use of a taser against a suspect at a traffic stop who did not comply with verbal commands.]; Benson, 2009 WL 3615026 [Defendant's use of force, including taser, was not unreasonable where officers believed Plaintiff posed a threat of serious harm]. Additionally, Plaintiff's counsel conceded at the hearing



that, once Plaintiff was handcuffed and under control, no further physical force was used against him at that time.  Wilson v. Flynn, 429 F.3d 465, 469 (4th Cir. 2005)[Finding that where Plaintiff " does not allege that the officers used any improper force after restraining him; this fact distinguishes [Plaintiff's] case from many in which we have held the Plaintiff has alleged an excessive force claim."].

No constitutionally excessive use of force is shown in this evidence, even when considered in the light most favorable to the Plaintiff.  Therefore, Plaintiff's Fourth Amendment excessive force claim with respect to his arrest is without merit, and should be dismissed.  Benson, 2009 WL 3615026 [Defendant's use of force, including taser, was not unreasonable where officers believed Plaintiff posed a threat of serious harm]; cf. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; see Graham, 490 U.S. at 396 ["The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"].

**Fourteenth Amendment Claim**.  Plaintiff's Fourteenth Amendment claim arises out of the force used against him after he exited the back of Stern's vehicle when the car door was opened.  At that point Plaintiff was already in custody and restrained by both hand and leg shackles. Williams v. Smith, No. 08-2841, 2009 WL 4729975 at * 2 (D.S.C. Dec. 3, 2009)["Where the individual is an arrestee, or the officers have placed him in custody, the court must analyze the claim through the lens of the Due Process Clause of the Fourteenth Amendment"].[11]  According to the

---

[11]Defendants argue that this second use of force should also be considered under the Fourth Amendment because, at the time force was used, Plaintiff had "escaped" from the back of the squad

(continued...)



evidence, when Plaintiff climbed out of the back of the squad car, at least two (2) sheriff's deputies were present, and both his hands and feet were shackled. However, when Plaintiff refused to comply with commands, Sharpe tased him to try to get him under control. Sharpe testified that the taser appeared to have no effect, so he activated the taser again, which eventually dropped Plaintiff to the ground. Plaintiff was at that point surrounded by officers as he lay on the ground in leg and hand shackles. The video shows Plaintiff slowly struggling to get up - with Bohlander at one point putting his hand on Plaintiff's shoulders, but then taking it away. When Plaintiff gets to his feet, he is tased again by both Sharpe and Stern as he gradually moves forward before eventually again collapsing to the ground.

When reviewing a claim of excessive use of force under the Fourteenth Amendment, the Court should consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the extent of the injury inflicted, and 4) whether the force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm. Williams, 2009 WL 4729975, at * 2; Orem, 523 F.3d at 446; see also Whitley v. Albers, 475 U.S. 312, 321 (1986); Majette v. GEO Group, Inc., No. 07-591, 2010 WL 3743364, at * 6 (E.D.Va. Sept 22, 2010); see Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]. While both parties seek summary

---

[11](...continued)
car and was no longer "in custody". However, although Plaintiff was no longer in the back of the squad car, he was in both hand and leg shackles and was surrounded by police officers. See Plaintiff's Exhibit 6 [Television Station Video]; see also Sharpe Deposition, pp. 41-45. Therefore, Defendants' argument that Plaintiff was not at that point an "arrestee" is without merit. Williams, 2009 WL 4729975, at * 2.



judgment on this claim, after review of the facts and evidence, the undersigned concludes that neither party is entitled to this relief.

First, considering Plaintiff's previous erratic and belligerent conduct, the fact that he was (again) being non-compliant, the fact that tasers are an approved method of control, and the facts and circumstances known to the Defendants at that time, the undersigned cannot find as a matter of law that the Defendants use of tasers in an attempt to control the Plaintiff amounted to an unconstitutional excessive use of force. Cf. Wargo v. Municipality of Monroeville, 646 F.Supp. 2d 777,785 (W.D.Pa. 2009)[Finding that subsequent tasings of a suspect were not excessive after initial tasings were ineffective]; Meyers v. Baltimore County, No. 10-549, 2011 WL 4526021, at * 7 (D.Md. Sept. 28, 2011)[Concluding that some additional use of a taser as a pain compliance tool deployed against an uncooperative subject was certainly acceptable]; Fils, 647 F.3d at 1289-1290 [Noting that "[w]here a suspect appears 'hostile, belligerent, and uncooperative,' use of a taser might be preferable to a 'physical struggle [causing] serious harm' to the suspect or officer."] (quoting Draper, 369 F.3d at 1278. Therefore, considering the facts and evidence in the light most favorable to the Defendants, Plaintiff is not entitled to summary judgment on this claim.

However, while use of tasers to control a subject is not itself per se unconstitutional, a reasonable jury could also find under these facts that the Sheriff's deputies could have physically restrained the Plaintiff when he got out of the squad car without the use of any undue force or any resulting injuries, rather than tase him, since there were at least two (2) deputies present and he was in both hand and leg shackles. Cf. Orem, 523 F.3d at 448-449 [Finding that a constitutional violation may occur when a taser is not used for a legitimate purpose such as protecting the officers, protecting the detainee, or preventing the detainee's escape]. Additionally, after Plaintiff was on the ground and



surrounded by several Sheriff's deputies, the videotape appears to show that Plaintiff could have again been restrained by the officers when he attempted to get up. Plaintiff does not appear to be acting violently at that time, and even after Plaintiff got up the surrounding Sheriff's deputies were in a position to have physically restrained him. Instead, however, the video shows Plaintiff being administered multiple shocks with the taser before finally collapsing back onto the ground. See Plaintiff's Exhibit 6 [Television station video].

Under these circumstances, a "reasonable jury could find that [the Defendants] application of [their tasers] under the circumstances was unnecessary, excessive, and not a good faith effort to restore order". Williams, 2009 WL 4729975, at * 3. Therefore, considering this evidence in the light most favorable to the Plaintiff, the Defendants are not entitled to summary judgment on Plaintiff's Fourteenth Amendment excessive force claim. Muhammed v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law!"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 250-252 (1986).[12]

---

[12]While the Defendant Bohlander is not alleged to have engaged in the tasing of the Plaintiff for purposes of Plaintiff's Fourteenth Amendment claim, a law enforcement officer who is otherwise a bystander may still be held liable for an act of excessive force where they are confronted with a fellow officer's illegal act and possess the power to prevent it but fail to do so. Randall v. Prince Georges County, Md., 302 F.3d 188, 203 (4th Cir. 2002); see also O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2nd Cir. 1988)[Observing that officer who stands by and does not seek to assist the victim could be "tacit collaborator"]. Considering the conduct and events as shown on the videotape and the other evidence in the light most favorable to the Plaintiff, Bohlander's presence at the scene and participation in the events at issue is sufficient to create a genuine issue of fact as to whether he was complicit in the allegedly unlawful and excessive use of force to avoid summary judgment being

(continued...)



Finally, while the Defendants assert that, even if a genuine issue of fact as to whether excessive force was used exists, they are still entitled to summary judgment on the basis of qualified immunity, the undersigned does not agree. It was clearly established at the time of this incident that law enforcement officers violate an individual's constitutional rights if they use excessive force against them as defined by the applicable caselaw, and in a South Carolina case involving a 2006 use of police force (three years prior to the incident here) it was held that use of a taser against a bound detainee when such use is not necessary can amount to excessive force and violate a clearly established constitutional right. Williams, 2009 WL 4729975, at * 4. Therefore, this is an issue of fact for the jury, and is not an appropriate ground for summary judgment. Pearson v. Callahan, 555 U.S. 223, 231 (2009)[Qualified immunity shields public officials "from liability from civil damages [only] insofar as [their] conduct [does] not violate clearly establish statutory or constitutional rights of which a reasonable person would have known"] (quoting Harlow v. Fitzgterald, 457 U.S. 800, 818 (1982).

In sum, summary judgment should be granted to the Defendants on Plaintiff's Fourth Amendment excessive force claim, while both parties' motions for summary judgment should be denied with respect to Plaintiff's Fourteenth Amendment post-custody excessive force claim.

## II.

### (Second Cause of Action)

In his Second Cause of Action, Plaintiff alleges that the Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. In their motion for summary judgment,

---

[12](...continued)
entered in favor of this Defendant.

16



Defendants argue that Plaintiff's ADA claim lacks merit, and at the hearing Plaintiff's counsel advised the Court that Plaintiff was abandoning this cause of action. Therefore, this claim should be dismissed.

## III.

### (Third Cause of Action)

In his Third Cause of Action, Plaintiff asserts that the Defendants Charleston County and the Charleston County Sheriff's Department were negligent, grossly negligent, reckless, willful and wanton, and failed to exercise the proper duty of care with respect to Plaintiff's treatment on the evening of January 9, 2009. This claim is asserted pursuant to the South Carolina Tort Claims Act (SCTCA), which provides a limited waiver of immunity by state and local governmental entities. See S.C. Code Ann. § 15-78-10, et seq.

Initially, the undersigned is constrained to note that all of the deputies alleged to have engaged in the conduct set forth in the Complaint were employees of the Sheriff, not the County, and Plaintiff's counsel acknowledged at the hearing that there is no evidence to show that Charleston County had any oversight of the Sheriff's deputies involved in this case, or was in any way responsible for the training of these deputies. Therefore, Charleston County is entitled to dismissal as a party Defendant in this case.

With respect to the Charleston County Sheriff's Department,[13] this Defendant may be

---

[13]It is well established in South Carolina that a Sheriff's office is an agency of the State. Stewart v. Beaufort County, et al., 481 F.Supp. 2d 483, 492 (D.S.C. 2007). As such, as asserted against the Charleston County Sheriff's Department, this cause of action is a suit against the State of South Carolina itself. Id.; see also Gulledge v. Smart, 691 F.Supp. 947 (D.S.C. 1988), aff'd. 878 F.2d 379 (1989); Carroll v. Greenville County Sheriff's Dept., 871 F.Supp. 844, 845-846 (D.S.C. 1994). The SCTCA waives the State of South Carolina's sovereign immunity *in state court* for certain tort (continued...)



liable under the SCTCA if the Defendant Sheriff's Deputies were "grossly negligent" in the exercise of their duties.  See S.C. Code Ann. § 15-78-60 (25)[Providing that a governmental entity may be liable when its responsibility or duty towards a prisoner is exercised in a grossly negligent manner].  In South Carolina, gross negligence is defined as the "intentional, conscious failure to do something which one ought to do or the doing of something one ought not to do . . . It is the failure to exercise slight care".  Hendricks v. Clemson University, 529 S.E.2d 293, 297 (S.C. Ct. App. 2000)(internal citations omitted), rev'd on other grounds, 578 S.E.2d 711 (S.C. 2003).  Therefore, the question before the Court is whether there is a sufficient issue of fact with respect to whether one or more of the Defendant Sheriff's deputies acted with gross negligence.  If so, summary judgment is not appropriate on the SCTCA claim against the Sheriff's Department.  Cf. Walters v. County of

---

[13](...continued)
claims, but specifically reserves South Carolina's Eleventh Amendment immunity from suit in Federal Court.  See S.C. Code Ann. § 15-78-20(e)["Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."].  Therefore, the Defendant Sheriff's Department would normally be immune from suit on this claim in this Court.  However, this case was originally filed in state court, and was then removed to this federal district court by the Defendants.  See Court Docket No. 1.  Removal of this case from the state court by the Defendants waived the State's Eleventh Amendment immunity from suit on this claim.  Arnold v. South Carolina Department of Corrections, et al., No. 11-712, 2012 WL 684020, at * 2 (D.S.C. Jan. 3, 2012), adopted by, 2012 WL 684018 (D.S.C. Mar. 2, 2012); Union Pacific Railroad Company v. La. Public Service Commission, 662 F.3d 336, 341 (5th Cir. 2011)["[T]he central inquiry in determining a waiver of Eleventh Amendment immunity [is] whether the State's litigation conduct constituted a voluntary invocation of federal jurisdiction"].  Therefore, the Defendant Sheriff's Department is now subject to suit in this Court on this state tort claim.  Lapides v. Board of Regents of the Univ. System of Georgia, 535 U.S. 613, 619 (2002)[A state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims]; see also Cameron v. Cox, No. 10-1278, 2011 WL 1235308 at * 4 (D.S.C. Jan. 21, 2011) adopted by, 2011 WL 1212177 (D.S.C. Mar. 30, 2011); cf. Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005)[finding no waiver where state has not consented to suit in its own courts for such claims]; see also 28 U.S.C. § 1367(a) [Federal Court has jurisdiction over pendent state claim where it is part of the same case or controversy, arising from a common nucleus of operative fact, as the federal claim.]



Charleston, No. 01-59, 2002 WL 34703346, at * 8-9 (D.S.C. Feb. 7, 2002).

For the reasons already stated, the undersigned does not find that the Defendant Sheriff's Deputies acted in grossly negligent manner when Plaintiff was taken into custody. As discussed earlier in this Report and Recommendation, supra, the evidence does not show the requisite absence of care by the Sheriff's Department deputies in taking Plaintiff into custody or the "doing of a thing intentionally that one ought not to do". See Duncan v. Hampton County School District No. 2, 517 S.E.2d 449, 453 (S.C.Ct. App. 1999) [Defining gross negligence as "the doing of a thing intentionally that one ought not to do", or conduct lacking "the absence of care that is necessary under the circumstances"], citing Hollins v. Richland County School Dist. One, 427 S.E.2d 654, 656 (S.C. 1993).

However, with respect to the Sheriff's deputies conduct *after* Plaintiff was in custody, considered in the light most favorable to the Plaintiff the record contains evidence from which a jury could conclude that the officers' conduct was grossly negligent. The evidence shows that by that point Plaintiff's hands and feet were both shackled and he was surrounded by the Sheriff's deputies, and in light of all the facts and evidence there is a genuine issue of fact as to whether the deputies failed to exercise proper care under the circumstances and intentionally did "something one ought not to do" by tasing Plaintiff multiple times. Duncan, 517 S.E.2d at 453. Therefore, because a factual dispute exists as to whether one or more of the Sheriff's deputies acted with gross negligence, summary judgment is not appropriate on Plaintiff's post-arrest claim. See Staubes v. City of Folly Beach, 500 S.E.2d 160, 168 (S.C. Ct. App. 1998)["Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable



inference"].[14]

## IV.

### (Motion to Dismiss)

In addition to the motions for summary judgment, the Defendant Stern has filed a motion to dismiss the claim asserted against her pursuant to Rule 4(m), Fed.R.Civ.P. The file reflects that Stern was not initially named as a Defendant in this action, but was added as a Defendant by way of an Amended Complaint by Order filed September 20, 2011. See Court Docket No. 25. The Amended Complaint was placed on the docket effective that same date. See Court Docket No. 35.[15] Stern asserts, however, that she was never served with the Summons and Amended Complaint, and that the one hundred twenty day service period provided for in Rule 4(m) has expired, entitling this Defendant to dismissal of the claims against her.[16] See Rule 4(m), Fed.R.Civ.P. ["If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service

---

[14]There was also some discussion at the hearing as to whether Plaintiff was pursuing a failure to train claim as part of his tort claim. However, after counsel discussed Plaintiff's expert's finding that the training policies at issue were not deficient, Plaintiff's counsel was equivocal about whether Plaintiff was still pursuing a claim for failure to train. In any event, to the extent Plaintiff is still pursuing such a claim, it is without merit, as there is no showing of gross negligence related to the training at issue. See Hanna Deposition, p. 15; Sharpe Deposition, pp. 14, 16-17; Stern Deposition, pp. 54-55, 101; Bohlander Deposition, pp. 68-69; see also Defendants' Exhibits 15, 18 and 19 to Reply; cf. Sims v. Greenville County, No. 99-1732, 2000 WL 380122, at * 4 (4th Cir. April 14, 2000).

[15]The docket filing date correctly shows September 20, 2011. While the docket reflects that the entry date for this docket entry was December 12, 2011, that was due to a Clerk's Office error, not because of an error of counsel. The proposed amended complaint was attached to the motion to amend, and when the motion was granted the amended complaint should have been added to the docket at that time pursuant to the Court's ECF docketing system.

[16]Defendant Stern's motion to dismiss was filed April 16, 2012.

20



be made within a specified time. But, if the Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."].

Plaintiff opposes this Defendant's motion, stating that Plaintiff's counsel and defense counsel agreed via email for Plaintiff's counsel to accept service of the Amended Complaint. Attached to Plaintiff's brief is a copy of a series of emails between Plaintiff's counsel and Defense counsel wherein Defense counsel was referred to the Amended Complaint that had been filed with the Court, and in which Defense counsel states that (with respect to Plaintiff's federal claim, which is the only cause of action in which Stern is named), she is "happy to accept service". See Exhibit A to Plaintiff's Memorandum. Plaintiff's counsel argues that if there was any confusion over the parties' agreement with respect to acceptance of service, Plaintiff's counsel should have been so notified, but that instead Defense counsel waited until after one hundred twenty days had elapsed and then moved for dismissal. Plaintiff's counsel argues that, under these circumstances, the Defendant has not been prejudiced and that if a separate service on this Defendant is to be required, allowing an extension to do so would be the most fair, equitable and just result. The undersigned agrees.

While Defense counsel discusses the formal requirements for effecting service in her reply memorandum, it is certainly not unusual for a defense counsel to simply accept service on behalf of his or her client rather than require a formal service when an amended complaint is filed on ECF, file an answer, and proceed with the case. If, however, the Defendant Stern insists on a formal service of process as set forth in Rule 4(c), Fed.R.Civ.P., then under the circumstances presented here, Plaintiff should be provided an appropriate period of time in which to do so from the date of any order adopting this recommendation. See Rule 4(m) [Providing that court can order that service be made within a specified time]. Defendants' motion to dismiss on this ground should be denied.

21



**Conclusion**

Based on the foregoing, it is recommended that Plaintiff's motion for partial summary judgment, and Defendant Stern's motion to dismiss, both be **denied**.

With respect to the Defendants' motion for summary judgment, it is recommended that this motion be **granted** with respect to Plaintiff's Fourth Amendment excessive force claim as set forth in Plaintiff's First Cause of Action. Summary judgment should also be **granted** to the Defendants on Plaintiff's Second Cause of Action asserting a claim under the ADA, the Defendant Charleston County should be **granted** summary judgment with respect to Plaintiff's Third Cause of Action asserting a claim under the South Carolina Tort Claims Act, and the Defendant Charleston County Sheriff's Department should be **granted** summary judgment with respect to the state law claim in Plaintiff's Third Cause of Action in so far as it relates to his arrest.

The Defendants' motion for summary judgment should be **denied** with respect to Plaintiff's Fourteenth Amendment post-arrest claim for excessive use of force against the natural Defendants in their individual capacities, and with respect to Plaintiff's state law claim for gross negligence against the Defendant Charleston County Sheriff's Department under Plaintiff's Third Cause of Action pertaining to the force used against the Plaintiff post-arrest.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 30, 2012
Charleston, South Carolina

22



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

